FILED - CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

2007 MAY - 1  PM 2: 40

TX EASTERN-MARSHALL

BY

| | |
|---|---|
| GARY WEINSTEIN, Individually and as Representative of the Estate of JUDITH WEINSTEIN, as Representative of the Estate of ALEXANDER WEINSTEIN, and as Representative of the Estate of SAMUEL WEINSTEIN, <br><br> Plaintiffs. <br><br> vs. <br><br> UGS CORP. <br><br> Defendant. | § § § § § § § § § § § § § |

CIVIL ACTION NO. **2 - 0 7 C V - 1 7 3**
JURY  *TJW*

## PLAINTIFFS' ORIGINAL COMPLAINT

Come now Plaintiffs Gary Weinstein, Individually and as Representative of the Estate of Judith Weinstein, as Representative of the Estate of Alexander Weinstein, and as Representative of the Estate of Samuel Weinstein complaining of UGS Corp., respectfully showing the Court as follows:

## I.
### PARTIES

1.1    Plaintiff Gary Weinstein sues in his individual capacity for the wrongful death of his wife, Judith Weinstein, and his sons, Alexander and Samuel Weinstein. He also sues as Representative of the Estate of Judith Weinstein, Representative of the Estate of Alexander Weinstein, and Representative of the Estate of Samuel Weinstein. At all times pertinent to this action, Gary Weinstein was a citizen and resident of Michigan.

1.2     Defendant UGS Corp. (referred to herein as "UGS") is a Delaware corporation with its principal place of business in Plano, Texas, in the Eastern District of Texas, and may be served with service of process at Corp. Service Co., d/b/a CSC-Lawyers, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

## II.
### JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because this action, which has a controversy in excess of $75,000, is between citizens of different states.

2.2     This Court has personal jurisdiction over the Defendant, both generally and with regard to this specific action, that the exercise of personal jurisdiction over it is proper.

2.3     This is a proper venue, pursuant to 28 U.S.C. §1391(a) and (b), because it is a district in which Defendant resides and because a substantial part of the events giving rise this claim occurred in this judicial district.

## III.
### GENERAL ALLEGATIONS OF FACT

3.1     On May 3, 2005, Judith Weinstein was driving her two sons, Alexander (age 12) and Samuel (age 9), to the orthodontist's office. At approximately 3:30 p.m., Mrs. Weinstein was in the left hand lane of the road, waiting to turn left into the office parking lot.

3.2     At that time, Thomas Wellinger was driving his sport utility vehicle down the road when he plowed into the back of Mrs. Weinstein's vehicle at 70 miles per hour.

3.3     At the time of the accident, Mr. Wellinger had a blood alcohol level of almost 0.40 (several times over the legal limit).

3.4    As a result of the collision, Judith Weinstein, Alexander Weinstein, and Samuel Weinstein all sustained fatal injuries. Mr. Wellinger survived the accident.

3.5    Thomas Wellinger was an executive director of sales for UGS. At the time of the accident, he was the Global Director, in charge of a sales team.

3.6    Mr. Wellinger's superior was Ed Arlin, an Executive Vice President for UGS.

3.7    In January 2005, Ed Arlin asked two UGS employees to confront Thomas Wellinger with his suspicion that Mr. Wellinger had a serious drinking problem. UGS enrolled Mr. Wellinger in an abbreviated, 5-day rehabilitation program. The program was too abbreviated to be effective.

3.8    After Mr. Wellinger returned to work at UGS from the rehabilitation program, he continued to exhibit signs of alcohol abuse. It was obvious to numerous people at UGS, including Mr. Arlin, that their executive employee had serious drinking problems.

3.9    On May 3, 2005, Ed Arlin had a meeting with Thomas Wellinger in which he confronted Mr. Wellinger with his continued job performance problems that he believed were associated with his alcohol abuse. During that meeting, Mr. Arlin explained the plan of action UGS had decided to take as a condition of continuing Mr. Wellinger's employment as an executive at the company. Mr. Arlin, with the approval of executives at UGS's home office, directed Mr. Wellinger to see a psychiatrist that afternoon and to report back to him with the doctor's recommendations for treating Mr. Wellinger's alcohol problems.

3.10    The decisions regarding how to handle Mr. Wellinger and his problem with becoming drunk during his working hours at UGS were made, ratified, and/or approved by personnel in UGS's corporate headquarters, in Texas. UGS personnel at

the highest levels, including Tony Affuso, the Chairman, CEO, and President of UGS, who was located in Texas, had personal knowledge of Mr. Wellinger's continuing alcohol abuse and made decisions as to how UGS would use alcohol rehabilitation programs and would continue to actively employ Mr. Wellinger even though he was in a state of obvious intoxication during the workday.

3.11    On May 3, 2005, Thomas Wellinger arrived at his UGS office at 7:25 a.m. Other than leaving the office for about an hour for lunch, he was at the office continuously from that time until he left the office shortly after 2:30 p.m. for the psychiatric appointment he was directed to attend by Mr. Arlin. He had a meeting with a manager minutes before he left that afternoon. At the time of the accident, Mr. Wellinger was driving from his UGS office to his psychiatric appointment, with a blood alcohol level of approximately 0.40. A blood sample taken at 5:15 p.m. that day showed 435 mg/dL of Ethyl Alcohol. A blood sample taken the morning after the accident showed Mr. Wellinger still had an alcohol level above the legal limit (114 mg/dL).

3.12    Thomas Wellinger, an executive for UGS, had been drinking at his office on the day of the accident and was obviously intoxicated during his meetings with upper management that day before he was directed to attend an appointment with his psychiatrist that afternoon.

3.13    Thomas Wellinger's consumption of alcohol during the workday at his UGS office and his obvious intoxication upon leaving the UGS office during the workday on May 3, 2005, was a proximate cause of the accident that claimed the lives of Judith Weinstein, Alexander Weinstein, and Samuel Weinstein.

## CLAIMS FOR RELIEF

### IV.
### NEGLIGENCE

4.1     UGS committed acts of omission and commission, collectively and severally constituting negligence, which were a proximate cause of the accident and the damages suffered by Plaintiffs.

4.2     UGS's acts of negligence that proximately caused the accident and injuries include vicarious liability under the doctrine of *respondeat superior* for the negligent conduct of its employee, Thomas Wellinger, committed in the course and scope of his employment for UGS.

4.3     UGS's acts of negligence that proximately caused the accident and injuries include vicarious liability for the negligent conduct of its vice-principal, Thomas Wellinger, committed in the workplace.

4.4     UGS's acts of negligence that proximately caused the accident and injuries include independent liability for negligently controlling a highly intoxicated employee during the workday, including sending him to drive to an appointment despite his state of obvious intoxication.

4.5     UGS's acts of negligence that proximately caused the accident and injuries include independent liability for negligently retaining and supervising Thomas Wellinger.

4.6     UGS's acts of negligence that proximately caused the accident and injuries include independent liability for undertaking a duty to control a habitually drunken and highly intoxicated employee and failing to perform these tasks as would a reasonably prudent employer, which increased the risk of harm to others.

## V.
### GROSS NEGLIGENCE

5.1    UGS committed gross negligence, which was a proximate cause of the injuries to Plaintiffs and the damages of Plaintiffs, and for which Plaintiffs are entitled to recover punitive damages.  Specifically, UGS was subjectively aware of the risk created by Thomas Wellinger's drinking problem and its continued employment of Mr. Wellinger in spite of his drinking problem. Although UGS was subjectively aware of this risk, it continued to employ Mr. Wellinger and direct him to go to his doctor's appointment during the workday while he was obviously intoxicated in conscious disregard for the welfare, safety, and rights of others such as the Weinstein family. Further, as a vice-principal of UGS, the conduct of Thomas Wellinger committed at his workplace constituted gross negligence on behalf of the corporation.

### DAMAGES

## VI.
### COMPENSATORY DAMAGES

6.1    Plaintiff Gary Weinstein seeks compensatory damages arising from the wrongful deaths of his wife, Judith Weinstein, and his sons, Alexander and Samuel Weinstein, to compensate him for all pecuniary and non-pecuniary elements of wrongful death damages allowed by law, including past and future loss of love, comfort, companionship, and society; past and future mental anguish; and past and future loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that he would have received if not for the untimely deaths of his wife and sons.

6.2    Plaintiff Gary Weinstein, as Representative of the Estate of Judith Weinstein, Representative of the Estate of Alexander Weinstein, and Representative of

the Estate of Samuel Weinstein, seeks compensatory survival damages to compensate for all elements of survival damages allowed by law, including medical expenses, funeral and burial expenses, and conscious pain and suffering.

## VII.
### PUNITIVE DAMAGES

7.1     Because UGS is guilty of gross negligence, it should have punitive damages assessed against it in an amount deemed appropriate by the jury.

## VIII.
### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

8.1     Plaintiffs seek pre-judgment and post-judgment interest as provided by law.

## IX.
### CONDITIONS PRECEDENT

9.1     All conditions precedent to Plaintiffs' rights to recover herein and to Defendant's liability have been performed or have occurred.

## X.
### JURY DEMAND

10.1     Plaintiffs request a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray Defendant be cited to appear and answer herein, this cause be set down for trial before a jury, and Plaintiffs recover judgment of and from Defendant for their actual and exemplary damages, in such amount as the evidence shows and the jury determines to be proper, together with pre-judgment interest and post-judgment interest, costs of suit, and such other and further relief to which Plaintiffs may show themselves to be entitled, whether at law or in equity.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

By: _____

MIKAL C. WATTS
State Bar No. 20981820
Federal ID No. 12419
Attorney-in-Charge

FRANCISCO GUERRA, IV.
State Bar No. 00796684
Federal ID No. 22568
Of Counsel

Bank of America Plaza, Suite 100
300 Convent Street
San Antonio, Texas 78205
Phone:  (210) 527-0500
Fax:      (210) 527-0501

GOUDARZI & YOUNG
Brent Goudarzi
State Bar No. 00798218
Welby K. Parish Law Bldg.
301 North Titus Street
Gilmer, Texas  78644
Phone:  (903) 843-2544
Fax:      (903) 843-2026

ATTORNEYS FOR PLAINTIFFS