IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GARY WEINSTEIN, et. al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-CV-173 (TJW) |
| | § | |
| UGS CORP, | § | |
|     Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant UGS Corp.'s ("UGS") Motion to Transfer Venue, Rule 12(b)(6) Motion to Dismiss, and Motion for Leave to Designate a Responsible Third Party (#7). After considering the filings of the parties and the applicable law, the Court GRANTS Defendant's motion to transfer venue for the reasons expressed below, but does not rule on the motion to dismiss or the motion for leave to designate a responsible third party.

**I.  Factual Background**

Plaintiff Gary Weinstein ("Mr. Weinstein") filed claims against UGS individually and as a representative of the estates of Judith Weinstein, Alexander Weinstein, and Samuel Weinstein. Mr. Weinstein has been a citizen and resident of Michigan at all relevant times in this litigation. UGS is a Delaware corporation with its principal place of business in Plano, Texas.

There is no disagreement between the parties that, while employed by UGS in Michigan, Thomas Wellinger ("Mr. Wellinger") struck and killed Judith, Alexander, and Samuel Weinstein while driving under the influence of alcohol after leaving UGS's offices in Livonia, Michigan. Mr. Wellinger was tried and convicted of second degree murder and was sentenced to nineteen years in

prison in the Michigan Department of Corrections, where he currently resides. Mr. Weinstein alleges that UGS is liable both vicariously and independently for Mr. Wellinger's negligence.

There has been a significant amount of litigation related to this accident. Mr. Wellinger's insurer filed suit against him in Oakland County Michigan claiming that his automobile insurance lapsed by the time of the accident. In that lawsuit, several of UGS's employees were subpoenaed and noticed for deposition. The witness lists in that litigation included multiple individuals located in Michigan, including UGS employees. Mr. Wellinger's employment records and their relation to Mr. Wellinger's job performance and mental state before the collision were at issue in another Oakland County lawsuit.

Probate proceedings are currently pending in the Oakland County Probate Court. Previously, Mr. Weinstein settled wrongful death claims against other defendants. The Oakland Country Probate Court had to approve that settlement just as it must approve this settlement. The vast majority of likely witnesses in this litigation are located in Michigan. Substantially all of the events that give rise to this lawsuit occurred in Michigan.

**II.   Discussion**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought." 28 U.S.C. § 1404(a) (2004). It is within the district court's sound discretion whether to transfer venue under section 1404(a). *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). When considering whether to transfer venue, the district court "must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999)

(stating that district courts have the discretion to decide whether to transfer venue according to "individualized, case-by-case consideration of convenience and fairness").

When deciding whether to transfer venue, the court balances the following two categories of interests: "(1) the convenience of the litigants, and (2) the public interests in the fair and efficient administration of justice." *Hanby*, 144 F. Supp. 2d at 676. The convenience factors weighed by the district court are the following: (1) the plaintiff's choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Mohamed*, 90 F. Supp. 2d at 771. The court also balances the following public interest factors: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.* The moving party bears the burden of demonstrating that venue should be transferred to another forum. *Hanby*, 144 F. Supp. 2d at 676. To meet this burden, the moving party must show that "the balance of convenience and justice *substantially* weighs in favor of transfer." *Mohamed*, 90 F. Supp. 2d at 768.

    A.    Convenience Factors

        1.  The plaintiffs' choice of forum

The plaintiffs' choice of forum is neither controlling nor determinative, but is still a factor to be considered. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). The plaintiff's choice of forum, however, will not be disturbed unless it is clearly outweighed by other factors. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830 (E.D. Tex. 2002). The plaintiffs chose to bring

their suit in the Eastern District of Texas, Marshall Division. Therefore, this factor weighs against transfer.

      2. The convenience of parties and material witnesses

Next, the court will assess the convenience of the parties. The convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *Shoemake*, 233 F. Supp. 2d at 832. In this case, the plaintiff resides in Michigan. The defendant has offices throughout the country, including Michigan, although its principal place of business is in Texas. In fact, the employee through whom the plaintiff alleges that UGS is vicariously liable was employed in the Livonia, Michigan office. Most, if not all, of the likely UGS employees who will be witnesses in this case are located in Michigan. Accordingly, the convenience of the parties weighs in favor of transfer.

The court now considers the convenience of the witnesses. Courts routinely consider whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed,* 90 F. Supp. 2d at 774. Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake*, 233 F. Supp. 2d at 832. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Mohamed*, 90 F. Supp. 2d at 775 (quoting *Hupp v. Siroflex of America, Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

The plaintiff has not provided evidence that likely non-party witnesses for this case reside outside of Michigan. The defendant has provided affidavits notifying the court that "virtually every possible witness" for the accident is located in Michigan. Further, it seems that the vast majority, if not all, of the non-party fact witnesses reside in Michigan. For example, Mr. Wellinger is

incarcerated in Michigan. The investigating officers in the criminal investigation are located in Michigan as well as the Michigan State Police toxicologist who analyzed Mr. Wellinger's blood sample.

The evidence also shows that substantially all of the defendant's employees who are now known to have personal knowledge of the accident and related facts are located in Michigan. There are roughly twelve UGS employees who gave interviews to the authorities during the criminal investigation of Mr. Wellinger and those witnesses reside in Michigan. UGS employees residing in Michigan likely will testify to matters related not just to the accident itself, but to the knowledge that the defendant's employees had of Mr. Wellinger's alcohol abuse and the resulting actions of those employees. To that point, the plaintiff alleges in the complaint that Mr. Wellinger's supervisor, Mr. Ed Arlin, confronted Mr. Wellinger on the day of the accident to outline the plan that UGS had made concerning Mr. Wellinger's alcohol abuse. Allegedly, Mr. Arlin directed Mr. Wellinger to see a psychiatrist that afternoon and to report back to Mr. Arlin the psychiatrist's recommendations. This evidence is central to the plaintiff's direct liability claims and gross negligence claims because it addresses the remedial steps taken by UGS in response to Mr. Wellinger's alcohol abuse.

The plaintiff notes that "high level executives" of UGS are located in Texas and that those witnesses will likely testify by deposition rather than in-person at trial. But the plaintiff provided the court with no evidence that these witnesses have personal knowledge of relevant facts at issue in this case. Additionally, those "high level executives" are party witnesses for the party asking the court to transfer the case.

UGS has specifically identified a large number of key witnesses–both party and non-party

5

witnesses who reside in Michigan.  Transferring the case to the Eastern District of Michigan will be significantly more convenient for the vast majority, if not all, material witnesses in this case.  This factor heavily favors transfer.

### 3. The place of the alleged wrong

There are multiple events that could create liability for the defendant.  The plaintiff argues that its direct liability and gross negligence claims relate to decisions made in Texas by "high level executives."  This is the only "event" that could give rise to the defendant's liability that occurred in Texas.  However, the plaintiff provided no evidence to the court that this "event" occurred.

Another event that could give rise to the defendant's liability is the accident itself.  The accident occurred in Michigan.  Moreover, the defendant could be liable for its employees' actions in response to learning of Mr. Wellinger's alcohol abuse.

Finally, the plaintiff alleges that Mr. Wellinger was inebriated at work on the day of the accident.  He also alleges that Mr. Wellinger met with Mr. Arlin on the day of the accident to discuss UGS's course of action related to Mr. Wellinger's alcohol abuse.  Additionally, the plaintiff alleges that Mr. Arlin asked two UGS employees to confront Mr. Wellinger concerning his alcohol abuse on another day.  All of these events can potentially create liability for the defendant.  Each of these events occurred in Michigan.

The incidents that could create liability for the defendant occurred in Michigan.  The plaintiff has not provided the court with any evidence of events occurring in Texas that could create liability for the defendant.  This factor weighs in favor of transfer.

### 4.  The cost of obtaining the attendance of witnesses and  the availability of compulsory process

The only potential witnesses for whom it is more convenient to attend trial in Marshall as opposed to the Eastern District of Michigan are the "high level executives." Plaintiff represented to the court that those witnesses would likely testify by deposition rather than in-person at trial. This factor favors transfer.

<u>5. The accessibility and location of sources of proof</u>

The court notes that this factor has become less significant in a transfer analysis because of the advances in copying technology and information storage. *Mohamed*, 90 F. Supp. 2d at 778. It is clear that the relevant documents and the sources of evidence are located in Michigan. However, documents and other- evidence can be transported to Marshall. In the court's view, this factor is neutral.

<u>6.  The possibility of delay and prejudice if transfer is granted</u>

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake*, 233 F. Supp. 2d at 834 (citing *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir. 2002)).  This case is not an exceptional case and, therefore, this factor is neutral.

*B.     Public Interest Factors*

<u>1. The administrative difficulties caused by court congestion</u>

Neither party is aware of any administrative difficulties flowing from the Eastern District of Michigan and not the Marshall Division of the Eastern District of Texas.  Therefore, this factor is neutral as to transfer.

<u>2.  The local interest in adjudicating local disputes</u>

The incident giving rise to this litigation has been extensively litigated in Michigan.  It

7

also involves evidence arising from a criminal investigation performed by Michigan law enforcement personnel that resulted in a Michigan resident's conviction for second degree murder. There is a local interest in adjudicating this dispute. This factor strongly favors transfer.

### 3. The unfairness of burdening citizens in an unrelated forum with jury duty

Texas has little interest in adjudicating this matter, particularly compared to the residents of Michigan. Accordingly, the court finds that this factor strongly favors transfer.

### 4. The avoidance of unnecessary problems in conflict of laws

Michigan substantive law will likely apply to the majority of issues in this case. Potentially, there might be instances where Texas law is applied, but it seems likely that Michigan law will largely govern this case. This factor favors transfer.

## III.  Conclusion

Upon application of the section 1404(a) factors to this case, the Court has exercised its discretion and has concluded that transfer to Eastern District of Michigan is warranted. Accordingly, the Court GRANTS Defendant's Motion to Transfer Venue but defers ruling on Defendant's Rule 12(b)(6) Motion to Dismiss or Motion for Leave to Designate a Responsible Third Party to the transferee Court. This case is hereby transferred to the Eastern District of Michigan.

SIGNED this 22nd day of October, 2007.

_T. John Ward_
T. JOHN WARD
UNITED STATES DISTRICT JUDGE